**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANDREW CARAVELLA; MARY CARAVELLA;
MAUREEN HYLAND; JOSEPH HYLAND;
RICHARD HAYES; KAY ANN HAYES; BRIAN
HENRY; JENNIFER HENRY; JOHN                                   No. 05-CV-1529
COLEMAN; TRACI COLEMAN; JEFFREY                                    (DRH)
DETRICK; CAROLEE DETRICK; MATTHEW
DOESCHER; WENDY DOESCHER; ROBERT
GIORDANO; CAROL GIORDANO;
DION HAZEN; GINA HAZEN; JEFFREY HURT;
JANET HURT; SCOTT KITCHNER; KELLY
KITCHNER; STEPHEN LAFARR; TAMMY
LAFARR; PAUL DREW; AMANDA MANN;
SCOTT PAIGE; CHRISTINE PAIGE;
BENJAMIN RHODES;LAURA RHODES;
PATRICK PHILLIPS; ANITA PHILLIPS; JOHN
ZABIELSKI; and REBECCA  ZABIELSKI,

                                        Plaintiffs,

          v.

HEARTHWOOD HOMES INC.; PACE
CONSTRUCTION COMPANY INC.; PACE
COMMUNITIES INC.; PACE BUILDERS LLC;
JOHN STAALESEN; STEPHEN STAALESEN;
TOWN OF WILTON; TOWN OF WILTON
TOWN BOARD; ROGER L. BLAUVELT,
Building and Code Enforcement Officer of the
Town of Wilton; RAYMOND W. ABBEY, former
Assistant Building Inspector of the Town of
Wilton; ROBERT A. ROECKLE, Assistant
Building Inspector of the Town of Wilton; TOWN
OF WILTON PLANNING BOARD;
ROBERT BUCHALSKI; MARY BUCHALSKI;
and KATHIE CARSWELL,
                                        Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

OFFICE OF MARC S. GERSTMAN                  MARC S. GERSTMAN, ESQ.
Attorneys for Plaintiffs                            CHERYL A. ROBERTS, ESQ.
313 Hamilton Street

Robinson Square
Albany, New York 12210

ROCHE, CORRIGAN, McCOY & BUSH                    SCOTT W. BUSH, ESQ.
Attorney for Defendants Hearthwood
    Homes, Inc.; Pace Construction
    Co., Inc.; Pace Communities, Inc.;
    Pace Builders, LLC; John Staalesen;
    and Stephen Staalesen
36 South Pearl Street
Albany, New York 12207

GOLDBERG SEGALLA LLP                             WILLIAM J. GREAGAN, ESQ.
Attorney for Defendant Pace Builders, LLC
8 Southwoods Boulevard
Suite 300
Albany, New York 12211-2526

HODGES WALSH & SLATER LLP                        PAUL E. SVENSSON, ESQ.
Attorney for Defendants Town of Wilton;
    Town of Wilton Town Board; Roger L.
    Blauvelt; Raymond W. Abbey; Robert A.
    Roeckle; and Town of Wilton Planning
    Board
75 South Broadway, Suite 415
White Plains, New York 10601

DeGRAFF, FOY, KUNZ & DEVINE, LLP                 DAVID F. KUNZ, ESQ.
Attorney for Defendants Robert Buchalski;        CHRISTINE M. CARSKY, ESQ.
        Mary Buchalski; and Kathie Carswell        AMY F. QUANDT, ESQ.
90 State Street
Albany, New York 12207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiffs are thirty-four individuals who purchased homes in the residential subdivision

known as Highland Hills Estates ("Highland Hills") in defendant Town of Wilton ("Town") in

Saratoga County.  Plaintiffs brought this action against the Town, the builders of the

subdivision, the real estate brokers who sold the properties, and individuals and entities related to those defendants alleging violations of the Civil Rights Act, 42 U.S.C. § 1983; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and various pendent state law claims.  See Compl. (Docket No. 1) at ¶¶ 407-504.  Specifically, plaintiffs allege that the homes were sold to them without safe or adequate wells contrary to defendants' representations.  Presently pending is the motion of defendants Robert Buchalski, Mary Buchalski, and Kathie Carswell, the real estate brokers, to dismiss pursuant to Fed. R. Civ. P. 9(b), 10(b), and 12(b)(6).  Docket No. 31.  Plaintiffs oppose the motion. Docket No. 48.  For the reasons which follow, defendants' motion is granted in part and denied in part.

## I. Background

The facts as alleged in the complaint are assumed to be true for purposes of this motion.  See Section II(A) infra.

Between 1990 and 2004, plaintiffs purchased homes in the Highland Hills. See Compl. at ¶¶ 1, 40.  Highland Hills is a forty-nine lot subdivision that was built in two phases, twenty-six homes in Phase I and twenty-three in Phase II.  Id. at ¶ 40.  Both the New York State Department of Health ("DOH") and the Town approved the construction of the homes but required that the homes be equipped with drilled drinking water wells having a minimum well casing of 25'.  Id. at ¶¶ 40-41.  Plaintiffs allege, however, that defendant builders constructed the homes with shallow wells that were not approved by the DOH.  Id. at ¶ 44.  Thereafter, the builders engaged in a scheme to defraud prospective home owners "by

3

inducing them to purchase homes without an adequate, approved water supply system." Id.
at ¶ 45.  The builders were assisted in this scheme by the three real estate defendants.  Id.
at ¶¶ 12, 45-46, 112.

The Buchalskis entered into a contract with the builders to serve as the exclusive site
agent for Highland Hills in exchange for a commission based on the purchase prices of the
home.  Id. at ¶ 108.  Plaintiffs allege that the Buchalskis  "knew of serious problems with both
the quantity and quality of well water supplies to Plaintiffs' homes yet fraudulently reassured
certain plaintiffs of the adequacy of such water supply" in order to collect commission fees
based upon the inflated values of the homes.  Id. at ¶ 109.  Various plaintiffs[1] contend that
they relied upon the Buchalskis' fraudulent misrepresentations when purchasing their homes.
Id. at ¶¶ 429, 434.  Plaintiffs also allege that Kathie Carswell, a real estate associate
salesperson with the Buchalskis' agency, Realty USA, knew there were problems with the
water supply in the homes of plaintiffs Giordano and Paige but fraudulently induced them to
purchase the homes at an inflated cost in order to obtain a higher commission.  See Compl.
at ¶¶ 13, 459-63.  This action followed.

## II. Discussion

The complaint alleges four causes of action.  The first alleges the deprivation of
plaintiffs' rights to substantive due process by the Town defendants in violation of 18 U.S.C.
§ 1983.  Compl. at ¶¶ 407-12.  The second and third allege RICO violations against the

---

[1] Caravella, Hyland, Hayes, Henry, Coleman, Doescher, Hazen, Kitchner, LaFarr,
and Rhodes.  See Compl. at ¶¶ 429, 434.

builders (second cause of action) and the Buchalskis (third cause of action).  Id. at ¶¶ 413-34.  The fourth alleges eight pendent state law claims, the third and fourth of which allege fraud against the real estate defendants.  Id. at ¶¶435-504.  The moving defendants seek dismissal on various grounds of all claims against them.

### A. Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "Dismissal of a civil RICO complaint for failure to state a claim is only appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations."  Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc. 271 F.3d 374, 380 (2d Cir. 2001) (citations and internal quotation marks omitted).

### B. RICO Cause of Action

The third cause of action alleges that the Buchalskis operated a RICO enterprise through their real estate business and, alternatively, through their marriage.  Compl. at ¶¶ 425, 430.

5

### 1. Statute of Limitations

Defendants first contend that the following plaintiffs' claims are barred by the statute of limitations: Matthew and Wendy Doescher ("Doeschers"), Scott and Kelly Kitchner ("Kitchners"), and Benjamin and Laura Rhodes ("Rhodes").

Civil RICO claims are subject to a four-year statute of limitations.  See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987); see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998).  "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury."  In re Merrill Lynch, 154 F.3d at 58 (citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)).  "Although RICO cases often involve 'pattern[s] of predicate acts that [are] complex, concealed or fraudulent,' the Supreme Court has clearly held that it is plaintiff's discovery of the injury, not discovery of the underlying pattern of predicate acts, which triggers the statute of limitations."  Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs., Inc., 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) (quoting Rotella v. Wood, 528 U.S. 549, 555-57 (2000)).  Here, the complaint was filed on December 7, 2005.  See Compl.  Therefore, if plaintiffs discovered or should have discovered the alleged RICO injury before December 7, 2001, any action arising from that injury would be barred.

### a. The Doeschers and Rhodes

The moving defendants contend that the Doeschers and Rhodes were on inquiry notice of the alleged fraud before December 7, 2001.  See Defs. Mem. of Law (Docket No. 31) at 5-7.  In support of their motion, defendants claim that the Doeschers and Rhodes

sustained their alleged injuries at the time they purchased their homes on September 5 and October 26, 2001, respectively.  See Compl. at ¶¶ 26, 34.  Defendants also contend that the Doeschers and Rhodes inquired before purchasing their homes about the adequacy of the water supply, thus putting them on inquiry notice of the alleged injuries.  In addition, they argue that the contentions of the Doeschers and Rhodes' that the water supply was woefully inadequate obligated them to make reasonable efforts to determine the source of the alleged injuries.  The Doeschers contend that the earliest they could have been on inquiry notice of the fraud was in November 2002 when the builders repaired a cracked plastic elbow that had been improperly installed.  See Compl. at ¶¶ 235-36.  The Rhodes contend that the earliest they could have been on inquiry notice was in July 2002 when their well failed to produce water and was replaced by the builders.  Compl. at ¶ 325; see also Pls. Reply Mem. of Law (Docket No. 48) at 5.

"The question of constructive knowledge and inquiry notice nay be one for the trier of fact and therefore ill-suited for determination on a motion to dismiss. . . . Nonetheless, the test is an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings . . . ."  Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996) (citations omitted); see also In re Merrill Lynch, 154 F.3d at 60 (holding that the question of inquiry notice need not be left to a finder of fact).  In support of their motion, defendants rely heavily on In re Merrill Lynch, 154 F.3d 56.  See Defs. Mem. of Law at 6-8.  However, in In re Merrill Lynch, the district court found that cautionary language in a prospectus and annual reports placed investors on inquiry notice of the fraudulent scheme.  See In re Merrill Lynch, 154 F.3d at 58-59.  Here, no such

"cautionary language" is revealed in the pleadings to alert the Doeschers and Rhodes to the allegedly faulty wells but reveal only statements certifying compliance with "all of the requirements of the applicable provisions of the law."  Compl. at ¶¶ 234, 324.  Thus, at this stage of the litigation, it cannot be conclude that the information provided to the Doeschers and Rhodes should have placed them on inquiry notice of the alleged fraud.  See Persaud v. Bode, No. Civ. 04-4475 (ARR), 2006 WL 1419397, at *3 (E.D.N.Y. Mar. 24, 2006) (rejecting defendants' motion to dismiss a civil RICO action on statute of limitations grounds).

Therefore, defendants' motion on this ground is denied.

### b. The Kitchners

Defendants contend that the Kitchners were on inquiry notice of the alleged fraud as early as May 2001.[2]  See Defs. Mem. of Law at 6-8.  In support of their contention, defendants argue that in May 2001, the Kitchners well point became "clogged" and was repaired by the builders, thus placing the Kitchners on inquiry notice of the alleged fraud.  See Defs. Mem. of Law at 7-8; see also Compl. at ¶ 280.  The Kitchners contend that the statute of limitations was tolled because of the fraudulent representations made by the builders that the well was "fine" and there was "plenty of water."  See Pls. Reply Mem. of Law at 5; see also Compl. at ¶ 280.

_____

[2] Defendants also contend that Scott Kitchner was placed on inquiry notice in February 2001 when, before purchasing the home, he "drove past the property and observed Defendant Stephen Staalesen using a backhoe to excavate the well area and inserting a point well."  Defs. Mem. of Law at 7; see also Compl. at ¶ 276.  However, simply driving by the property and observing a backhoe excavating a well would not alert a reasonable individual to suspect that a fraudulent act was taking place.

In order to toll the statute of limitations in a civil RICO action for fraudulent concealment, a plaintiff must establish the following three elements: "(1) the defendant wrongfully concealed material facts relating to the defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (citations and internal quotation marks omitted); see also Am. Med. Ass'n v. United Healthcare Corp., No. Civ. 00-2800 (LMM), 2006 WL 3833440, at *11 (S.D.N.Y. Dec. 29, 2006). "The plaintiff may prove the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 346 (S.D.N.Y. 2000) (citations and internal quotation marks omitted). "However, '[t]he burden of demonstrating the appropriateness of equitable tolling . . . . lies with the plaintiff.'" Lucent Techs., 420 F. Supp. 2d at 265 (quoting Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)).

The Kitchner's have alleged that both the builders and the Buchalskis, through various "fraudulent statements," attempted to conceal the improper installation of the well on their property.  See Compl. at ¶¶ 273, 280, 283.  However, as to the May 2001 repair, the Kitchners fail to allege that they relied on any fraudulent statements by the Buchalskis, instead stating that they "relied upon and were reassured by . . .  the fraudulent statements made by [the builders] during and after their well point was repaired in May of 2001."  Compl. at ¶ 283.  Further, the complaint lacks any allegations to support the Kitchners' contention

9

that they exercised due diligence in pursuit of the source of the problems with their well.

See Klehr v. A.O. Smith Corp., 521 U.S. 178, 194-96 (1997) (holding that "'fraudulent concealment' in the context of civil RICO embodies a 'due diligence' requirement"); see also In re Merrill Lynch, 154 F.3d at 60 (rejecting plaintiff's tolling exception argument in a RICO action because plaintiffs' failed to allege in the complaint that they exercised due diligence); United Healthcare, 2006 WL 3833440, at *11 (same); Town of Poughkeepsie v. Espie, 402 F. Supp. 2d 443, 456 (S.D.N.Y. 2005) (explaining the plaintiff's obligation in a civil RICO case to exercise due diligence).  Thus, plaintiffs have failed to plead adequately that as a result of the Buchalskis' alleged concealment, they could not, through reasonable diligence, have discovered the fraud.

However, the Kitchners also contend that the alleged scheme to defraud was "self-concealing" because the well was underground and its defects not readily apparent.  Pls. Reply Mem. of Law at 7.  Plaintiffs have adequately pleaded that defendants' fraudulently misrepresented the adequacy of the Kitchners' well and that because the well was buried, its defects were not readily apparent.  These allegations suffice to invoke the doctrine of equitable tolling to toll commencement of the onset of the period of limitations.  Accordingly, the motion as to the Kitchners on this ground is denied.


**2. RICO Enterprise**

The moving defendants next contend that plaintiffs have failed to plead a distinct "person" and "enterprise" as required by §1962(c).  See Defs. Mem. of Law at 9-10.  Further,

defendants argue that plaintiffs incorrectly plead that the marriage between Mary and Robert Buchalski is an association-in-fact enterprise.  See id.

The RICO statute makes it unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c) (2000).  Under § 1962(c), a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).   "The Supreme Court has explained that a RICO enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  Further, "[t]he enterprise must be separate from the pattern of racketeering activity . . . and distinct from the person conducting the affairs of the enterprise . . . ."  Id.  (citations omitted).

Here, defendants contend that plaintiffs have failed to plead a distinct "person" and "enterprise" under § 1962(c).  Defendants argue that "the distinctiveness requirement could not be circumvented by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant."  De Falco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001) (citations and internal

11

quotation marks omitted).  However, the Supreme Court has stated that "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of [the RICO] statute that forbids any 'person' unlawfully to conduct an "'enterprise.'"  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).  Thus, plaintiffs' allegation that the Buchalskis were the "persons" and Realty USA, Inc. is the "enterprise" are sufficiently distinct under § 1962(c).  See id. at 164 (distinguishing Second Circuit precedent on distinctness from the facts in Cedric Kushner); see also Compl. at ¶¶ 425, 425(a); Satinwood, 385 F.3d at 173 ("RICO requirements are most easily satisfied when the enterprise is a formal legal entity.").  Therefore, defendants' motion on this ground is denied.

As to the alternative contention that the Buchalskis' marriage constituted an association-in-fact enterprise , plaintiffs cite Am. Mfrs. Mut. Ins. Co. v. Townson, 912 F. Supp. 291 (E.D. Tenn. 1995), to support their argument that a marriage can be an enterprise under RICO.  In Townson, the district court held that "with the allegations present in the [instant] case, the Court finds that a marriage can be an 'enterprise' under RICO."  Townson, 912 F. Supp. at 295.  However, as discussed both above and in Townson, "[a]n association in fact enterprise is an entity separate and apart from the pattern of racketeering in which it engages."  Id. at 297; see also Satinwood, 385 F.3d at 173.  Thus, in order to satisfy this requirement of a RICO claim, the Second Circuit "requires that a nexus exist between the enterprise and the racketeering activity that is being conducted."  Satinwood, 385 F.3d at 174; see also United States v. Indelicato, 865 F.2d 1370, 1384 (2d Cir. 1989) ("no RICO violation can be shown unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise"); Townson, 912 F. Supp. at 297 ("to satisfy [the

12

pattern of racketeering] requirement of a RICO claim, there must be evidence 'that the facilities and services of the enterprise were regularly and repeatedly utilized to make possible the racketeering activity'" (citation omitted)).

In <u>Townson</u>, the court found that the complaint "sufficiently alleges the defendants' use of the marital home and assets to engage in the supposed wire and mail fraud."  Here, however, the complaint is completely devoid of any allegations demonstrating a nexus between the Buchlaskis' marriage and the alleged pattern of racketeering.  The complaint simply states, in wholly conclusory terms, that "Defendants Robert and Mary Buchalski . . . engaged in a scheme to defraud Plaintiffs through the association in fact enterprise created by their marital status."  Compl. at ¶ 113; <u>see also id.</u> at ¶ 430.  Thus, the plaintiffs' reliance on <u>Townson</u> is misplaced because the complaint and supporting factual allegations in <u>Townson</u> are clearly distinguishable from the complaint in this case.

Therefore, defendants' motion on this ground is granted as to plaintiffs' alternative claim that the Buchalskis' marriage constituted an association-in-fact enterprise and is denied as to the Realty USA enterprise.  <u>But see</u> subsection 4 <u>infra</u>.


**3. Operation and Control**

Defendants next contend that plaintiffs have failed to plead that the Buchalskis participated in the operation and management of Realty USA.  <u>See</u> Defs. Mem. of Law at 10-11.

Under RICO, a plaintiff must establish the existence of an enterprise and that the defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c); see also

Satinwood, 385 F.3d at 175-76.  In Reves v. Ernst & Young, 507 U.S. 170 (1993), the

Supreme Court examined this section "and adopted an 'operation or management' test to

determine whether a defendant had sufficient connection to the enterprise to warrant

imposing liability."  De Falco, 244 F.3d at 309 (citing Reves, 507 U.S. at 178-79).  In order to

conduct or participate in the conduct of an enterprise's affairs, "one must have some part in

directing those affairs."  Reves, 507 U.S. at 179; see also De Falco, 244 F.3d at 309.

However, "the word 'participate' makes clear that RICO liability is not limited to those with

primary responsibility."  Reves, 507 U.S. at 179; see also Satinwood, 385 F.3d at 176.

        In the Second Circuit, the "'operation or management' test typically has proven to be a

relatively low hurdle for plaintiffs to clear . . . especially at the pleading stage."  Satinwood,

385 F.3d at 176 (internal citations omitted); see also United States v. Allen, 155 F.3d 35, 41-

43 (2d Cir. 1998) (holding that the question of whether a defendant's conduct "constitutes

participation in the operation or management of the enterprise's affairs" is essentially one of

fact).  Here, plaintiffs allege that the Buchalskis

> [a]s agents of Realty USA . . .  exercised control over the Realty USA, Inc.,
> enterprise in a manner and to an extent necessary to carry out their scheme to
> defraud certain Plaintiffs.  Such control included using the facsimile machines,
> telephones, letter head and facsimile coversheets, support staff and offices of
> Realty USA, Inc., through which and from which such Defendants carried out
> their scheme to defraud certain Plaintiffs.

Compl. at ¶ 111.  Plaintiffs' allegations minimally suffice to demonstrate that the Buchalskis

participated in the operation and management of the alleged enterprise.  See Allen, 155 F.3d

at 42; see also AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. Civ. 04-2934 (ERK), 2005 WL

3710370, at *8 (E.D.N.Y. Feb. 22, 2005) ("[W]here the role of the particular defendant in the

RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question."); <u>Tuscano v. Tuscano</u>, 403 F. Supp. 2d 214, 226-27 (E.D.N.Y. 2005).  Thus, plaintiffs have sufficiently alleged that the Buchalskis conducted or participated in the affairs of the alleged enterprise.

Therefore, defendants' motion on this ground is denied.


### 4. Continuity

As the Supreme Court has explained, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 241 (1989); <u>see</u> <u>also</u> <u>De Falco</u>, 244 F.3d at 320.


### a. Closed-Ended Continuity

A closed-ended pattern of racketeering activity is demonstrated by proving a series of related predicate acts that amount to continued criminal activity "'extending over a substantial period of time.'"  <u>Satinwood</u>, 385 F.3d at 181 (quoting <u>GICC Capital Corp. v. Tech. Fin. Group, Inc.</u>, 67 F.3d 463, 466 (2d Cir. 1995)); <u>see</u> <u>also</u> <u>De Falco</u>, 244 F.3d at 321. "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." <u>H.J. Inc.</u>, 494 U.S. at 242.  Notably, the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years."  <u>Satinwood</u>, 385 F.3d at 181; <u>see also</u> <u>De Falco</u>, 244 F.3d at 321; <u>Hall v. Tressic</u>, 381 F. Supp. 2d 101, 110 (N.D.N.Y. 2005).  "Although closed-ended continuity is primarily a temporal concept, other factors such

as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." De Falco, 244 F.3d at 321; see also GICC Capital, 67 F.3d at 468.

Here, the moving defendants argue that plaintiffs failed to establish closed-ended continuity because the alleged scheme to defraud was "nothing more than a single scheme with the limited purpose of selling homes in a single development for more than their value." Defs. Mem. of Law at 14. Further, defendants argue that the alleged predicate acts took place over a period of less than two years. Id. at 14-15. Plaintiffs contend that they have established closed-ended continuity by alleging that (1) a pattern of racketeering activity lasting less than two years may still establish continuity, (2) that the Buchalskis defrauded ten sets of plaintiffs over twenty months and committed ten separate acts of wire and mail fraud, and (3) the Buchalskis' scheme was not a single scheme but a multi-faceted scheme to defraud unsuspecting home owners. See Pls. Reply Mem. of Law at 17-19.

Here, the plaintiffs' allegations suggest that the racketeering activity took place over approximately fourteen months.[3] The complaint alleges that the first act of wire fraud[4] was

_____

[3] The complaint alleges that the Buchalskis committed the alleged predicate acts "over a substantial period of time." Compl. at ¶¶ 428, 433. However, the complaint fails to specify when the alleged predicate acts began or ended. In their reply to defendants' motion, plaintiffs contend that the Buchalskis' alleged pattern of racketeering lasted "20 months." See Pls. Reply Mem. of Law at 18. The defendants calculate that the alleged predicate acts of wire and mail fraud began in February 2001 and lasted until January 7, 2002. See Defs. Mem. of Law at 14 (citing Compl. at ¶ 369). Defendants also infer from the complaint that the alleged predicate acts of bank fraud took place in or about October 2001, February 2002, and April 2002. Id. (citing Compl. at ¶¶ 157, 160, 198, 201, 245, 251). Thus, defendants' final calculation concludes that the complaint alleges that the predicate acts began in February 2001 and ended in April 2002, thus lasting fourteen months. Id. at 15. After reviewing the complaint, especially the chart of the alleged predicate acts of wire and mail fraud found in paragraph 369, the Court concludes that the

16

committed by the Buchalskis in February 2001, when the Buchalskis sent the purchase-and-sale agreement to the Kitchners via facsimile machine.  <u>See</u> Compl. at ¶ 272.  The last alleged act of wire fraud occurred on March 19, 2002, when Mary Buchalski, on behalf of the builders, telephoned Traci Coleman and informed her that she would have to pay an additional $260.00 if she wanted a forty-four gallon water holding tank installed at her home. <u>See</u> Compl. at ¶¶ 207-209.  As to the bank fraud, plaintiffs allege that the fraudulent recommendations to obtain their mortgages through M&T Bank occurred in or about October 2001, February 2002, and April 2002.  <u>See</u> Compl. at ¶¶ 157, 160, 198, 201, 251, 254.

Thus, plaintiffs' allegations make clear that the alleged racketeering activity extended for, at most, fourteen months.  As discussed above and cited repeatedly by various district courts, the Second Circuit has never found a closed-ended pattern of racketeering where the predicate acts spanned fewer than two years.  <u>See</u>, <u>e.g.</u>,  <u>Satinwood</u>, 385 F.3d at 181 (the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years"); <u>De Falco</u>, 244 F.3d at 321 ("this Court [Second Circuit] has never held a period of less than two years to constitute a 'substantial period of time'"); <u>Tressic</u>, 381 F. Supp. 2d at 110 (same); <u>Fresh Meadows Food Servs., LLC v. RB 175 Corp.</u>, No. Civ. 04-4767 (NG)(RLM), 2006 WL 2728935, at *6 (E.D.N.Y. Sept. 25, 2006) ("The Second Circuit generally requires a showing that the alleged racketeering activity lasted for over two years.").

_____

alleged scheme lasted at least fourteen months.

[4] Plaintiffs' complaint contains only one allegation of mail fraud against the Buchalskis.  <u>See</u> Compl. at ¶ 162 (alleging that the fraudulent purchase and sale of real estate agreement mailed to Kay Ann Hayes in February 2002 was sent via the United States mail); <u>see</u> <u>also</u> <u>id.</u> at  ¶ 369.

Accordingly, plaintiffs have failed to allege facts to demonstrate that the racketeering activity lasted long enough to establish closed-ended continuity.  See, e.g., Eastchester Rehab. & Health Care Ctr., L.L.C. v. Eastchester Health Care Ctr., L.L.C., No. Civ. 03-7786 (LTS)(FM), 2005 WL 887154, at *5 (S.D.N.Y. Apr. 15, 2005) (holding that an alleged closed-ended pattern of racketeering for a  "mere 14 months" was insufficient to state a claim); Wiltshire v. Dhanraj, 421 F. Supp. 2d 544, 550 (E.D.N.Y. 2005) (holding that a nineteen-month period of racketeering was insufficient to establish closed-ended continuity).

Although closed-ended continuity is primarily a temporal concept, other factors such as (1) the number and variety of acts, (2) the number of participants, (3) the number of victims, and (4) the presence of separate schemes are relevant in determining whether closed-ended continuity exists.  See De Falco, 244 F.3d at 321.  Here, the alleged scheme involved, at most, thirteen predicate acts of mail, wire, and bank fraud.  See Compl. at ¶¶ 157, 160, 198, 201, 251, 254, 369.  This limited number of alleged predicate acts stretching over the course of fourteen months fails to support closed-ended continuity.  See City of New York v. Pollock, No. Civ. 03-253 (PAC), 2006 WL 522462, at *9 n.18 (S.D.N.Y. Mar. 3, 2006) (finding that sixty-nine acts of fraud over a nineteen-month period was sufficient to establish closed-ended continuity).

As to the number of participants and victims, plaintiffs allege that the Buchalskis defrauded ten sets of individuals.  See Compl. at ¶¶ 427, 432.  However, the interests of each of these ten sets were conjoined and were not harmed by separate schemes.  See Kadouri v. Fox, No. Civ. 03-1725 (NG), 2005 WL 783255, at *3 (E.D.N.Y. Jan. 24, 2005) (finding that the interests of a married couple, who were the victims of a single scheme of

racketeering, were conjoined).  Further, two individuals, Robert and Mary Buchalski, hardly

constitute a significant number of participants in the alleged scheme to defraud the ten sets

of plaintiffs.  See FD Prop. Holding, Inc. v. US Traffic Corp., 206 F. Supp. 2d 362, 372-73

(E.D.N.Y. 2002) (collecting cases).

Moreover, the complaint alleges, in conclusory terms, a single scheme asserting that

the Buchalskis "fraudulently reassured certain Plaintiffs of the adequacy of [the] water supply

[in Highland Hills] in order to induce such Plaintiffs to purchase homes at inflated prices . . . .

Such Defendants directly benefitted from this scheme by collecting real estate commission

fees at the time of contract closing based on the inflated home values."  Compl. at ¶ 109.

Plaintiffs' allegations merely demonstrate a single, non-complex scheme to obtain real estate

commissions by fraudulently inducing individuals to purchase homes with inadequate water

supply.  Therefore, plaintiffs' have failed to make any factual allegations in the complaint that

could reasonably be interpreted as establishing a multi-faceted scheme to defraud.  Skylon

Corp. v. Guilford Mills, Inc., No. Civ. 93-5581 (LAP), 1997 WL 88894, at *7 (S.D.N.Y. Mar. 3,

1997) (holding that "where a RICO claim is based on acts narrowly directed toward a single

fraudulent end with a limited goal, the claim will usually fail"); see also FD Prop. Holding, 206

F. Supp. 2d at 372 ("Courts in the Second Circuit have generally held that where the conduct

at issue involves a limited number of perpetrators and victims and a limited goal, the conduct

is lacking in closed-ended continuity.").  Thus, the limited duration of the alleged pattern of

racketeering, along with plaintiffs' failure to allege the other non-temporal aspects of a RICO

pattern of racketeering, demonstrates that the allegations contained in the complaint are

insufficient to state a claim of closed-ended continuity.

**b. Open-Ended Continuity**

"'To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed.'" Satinwood, 385 F.3d at 180 (quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)). Open-ended continuity is established when "an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity." De Falco, 244 F.3d at 323; see also H.J. Inc., 492 U.S. at 242-43. "However, 'where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.'" De Falco, 244 F.3d at 323 (quoting Cofacredit, 187 F.3d at 423 (citations omitted)).

Here, the Buchalskis argue that plaintiffs failed to establish a pattern of open-ended continuity because the alleged scheme of selling homes in Highland Hills was inherently terminable and came to its natural end when the homes were sold and their exclusive sales contract with the builders expired. See Defs. Mem. of Law at 12-13. Plaintiffs contend that they have established open-ended continuity by alleging that (1) the Buchalskis would have continued to fraudulently induce individuals to purchase homes in Highland Hills had plaintiffs not commenced litigation, and (2) the predicate acts alleged in the complaint constitute the

Buchalskis' regular way of conducting their ongoing legitimate business.  See Pls. Reply Mem. of Law at 14-17.

As to the plaintiffs' first contention, the Second Circuit has explicitly rejected similar speculative allegations attempting to establish a threat of continued criminal activity.  In GICC Capital, the Court held that the plaintiff's contention that one of the named defendants "would have continued to transfer money overseas had [plaintiff] not commenced litigation" was "entirely speculative."  GICC Capital, 67 F.3d at 466; see also FD Prop. Holding, 206 F. Supp. 2d at 370-71 (collecting cases).  Here, plaintiffs have failed to make any factual allegations that support their contention that had they "not filed suit against the Buchalskis there is no basis to conclude that the Buchalskis would have altered this mode of operation which had obviously proven successful."  Pls. Reply. Mem. of Law at 16.  Moreover, courts have generally found that the sale of land is an "inherently terminable" act.  See United States v. Aulicino, 44 F.3d 1102, 1113 (2d Cir. 1995) (finding that the sale of property, "even if by fraudulent means," provided a natural end and did not threaten continued criminal activity); see also Eastchester Health Care Ctr., 2005 WL 887154, at *6 (holding that a scheme which fraudulently induced a victim to purchase nursing facilities was inherently terminable because it could not continue after the facilities were sold).

As for the second contention, plaintiffs allege that the predicate acts in the complaint "had become Robert and Mary Buchalski's regular way of conducting business."  Compl. at ¶ 428, 433.  However, plaintiffs' allegations are wholly conclusory and unsupported by any specific factual allegations.  See FD Prop. Holding, 206 F. Supp. 2d at 371 (collecting cases); see also Fresh Meadows, 2006 WL 2728935, at *5.  Further, to the extent that plaintiffs

21

contend that the nature of the predicate acts themselves implies a threat of continued criminal activity, this argument must also fail.  The alleged predicate acts of wire, mail, and bank fraud in furtherance of the sale of homes in Highland Hills are not inherently unlawful.  See Aulicino, 44 F.3d at 1111 ("in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from [the] conduct"); see also Skylon Corp., 1997 WL 88894, at *6 (holding that "verbal and written misrepresentations made over the telephone and in letters, constituting wire and mail fraud [,]. . . [were not] inherently unlawful"); FD Prop. Holding, 206 F. Supp. 2d at 370-71.

Therefore, plaintiffs' allegations fail to demonstrate the requisite continuity and the moving defendants' motion on this ground is granted.

### 5. Conspiracy Claim

Section 1962(d) makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  Here, plaintiffs allege that the Buchalskis "conspired to engage in . . .  the conduct of the affairs of the enterprise [of both Realty USA and their marital enterprise], through a pattern of racketeering."  Pls. Reply Mem. of Law at 23-24; see also Compl. at ¶¶ 425(b), 430(b).  However, "[b]ecause the RICO conspiracy claim is dependent upon the Section 1962(c) RICO claim, dismissal of that claim mandates the dismissal of the RICO conspiracy claim."  FD Prop. Holding, 206 F. Supp. 2d at 373; see also Tressic, 381 F. Supp. 2d at 112 (dismissing the alleged RICO conspiracy claim because plaintiff failed to allege a legally sufficient substantive RICO claim).

22

Therefore, plaintiffs' RICO conspiracy claim is dismissed.[5]

## C. State Law Claims[6]

Defendants contend that "[b]ecause the RICO claim provides the only bases for federal jurisdiction against defendants Robert Buchalski and Mary Buchalski, the remaining state law fraud claim (Third cause of action)[7] should also be dismissed."  Defs. Mem. of Law at 1; see also Compl. at ¶¶ 454-58.  Defendants also argue that this Court should decline to exercise jurisdiction as to the fourth state law cause of action against Kathie Carswell

---

[5] Because plaintiffs fail to establish a RICO claim, the Court need not address defendants' remaining arguments for dismissal.  See Defs. Mem. of Law at 15-24.

[6] In their reply memorandum, defendants argue that in their initial memorandum of law, "they asserted that Plaintiffs have failed to plead fraud with particularity against Defendant Carswell."  Defs. Reply Mem. of Law (Docket No. 51) at 9.  Because of plaintiffs' failure to respond to this argument, defendants appear to be requesting that the state law cause of action be dismissed as to Carswell.  See Barmore v. Aidala, 419 F. Supp. 2d 193, 201 (N.D.N.Y. 2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim . . . and, in the Northern District of New York, is deemed consent to granting that portion of the motion.") (citations omitted)).  However, although defendants briefly mention Carswell in their initial motion to dismiss, it is not reasonably clear that they were moving to have the state law fraud claim against her dismissed on the ground that plaintiffs failed to plead with particularity.  See Defs. Mem. of Law at 18-19.  Moreover, defendants' preliminary statement in their initial memorandum of law simply states that: "With respect to Defendant Kathie Carswell, this Court should decline to exercise to [sic] jurisdiction as Plaintiffs only asserted a state law fraud claim (Fourth cause of action) against Defendant Carswell."  Thus, defendants failed to give adequate notice that they sought dismissal of the state law claim against Carswell for defective pleading, and their argument that such claim should be dismissed for plaintiffs' failure to oppose the motion on that ground is denied.

[7] The complaint asserts four causes of action alleged separately as "counts."  The fourth "count" alleges eight separate pendent state law claims alleged separately as "causes of action."

because plaintiffs have only asserted a state law claim against her.  See Defs. Mem. of Law

at 1; see also Compl. at ¶¶ 459-63.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. §

1367(a), which states in pertinent part that "in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution."

However, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim
> substantially predominates over the claim or claims over which the district court
> has original jurisdiction, (3) the district court has dismissed all claims over which
> it has original jurisdiction, or (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

Here, although the RICO claim as to the Buchalskis has been dismissed, the

remaining RICO and § 1983 claims over which this Court has original jurisdiction still

predominate the state law claims.  Further, the interests of judicial economy and

convenience support retaining supplemental jurisdiction over the state law claims as to the

moving defendants because the RICO and state law claims arise out of the same facts.  See

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) ("'[C]onsiderations of judicial

economy, convenience and fairness to litigants' support a wide-ranging power in the federal

courts to decide state-law claims in cases that also present federal questions."); see also

Levine v. Torino Jewelers, Ltd., No. Civ. 05-3159 (DLC), 2006 WL 709098, at *6 (S.D.N.Y.

Mar. 22, 2006); Advance Relocation & Storage Co. v. Local 814, Int'l Bhd. of Teamsters,

AFL-CIO, No. Civ. 03-4475 (DGT)(JM), 2005 WL 665119, at *11 (E.D.N.Y. Mar. 22, 2005) (retaining supplemental jurisdiction over state law claims because "the RICO and state law claims as to all defendants arise out of the exact same facts"); County of Washington v. Counties of Warren & Washington Indus. Dev. Agency, No. 93-0086 (FJS), 1997 WL 152001, at *7 (N.D.N.Y. Mar. 31, 1997) (retaining supplemental jurisdiction over state law claims "in the interests of judicial economy and fairness to the litigants").

Therefore, defendants' motion to dismiss the state law claims  on this ground is denied.


### III. Motion to Stay

Defendants request that this court stay the instant action pending resolution of an administrative action brought by DOH against the builders.[8]  See Defs. Mem. of Law at 24-25.  The DOH action alleges "38 violations related to 'failures to properly install an approved drilled well for an individual water supply system in the Highland Hills Estates realty subdivision.'" Compl. at ¶ 106.

It is well established that the obligation of federal district courts to adjudicate claims within their jurisdiction is "virtually unflagging."  Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976); see also Connecticut v. Cahill, 217 F.3d 93, 102 (2d Cir. 2000).  "Thus, there is little or no discretion to abstain in a case which does not meet

---

[8] In further support of their request for a stay, defendants cite to a case brought in New York Supreme Court, Saratoga County which is grounded in the same factual circumstances that are involved in this action.  See Defs. Mem. of Law at 24-25. However, the state action has been stayed pending resolution of this action.  See Roberts Aff. (Docket No. 49), Ex. A.  Accordingly, defendants' request on this ground is denied.

traditional abstention requirements." <u>Dittmer v. County of Suffolk</u>, 146 F.3d 113, 116 (2d Cir. 1998) (citation omitted).  In support of their motion, defendants rely primarily on <u>Farkas v. D'Oca</u>, 857 F. Supp. 300 (S.D.N.Y. 1994).

In <u>Farkas</u>, the district court held that the circumstances of a RICO action involving an underlying state matrimonial action warranted abstention under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).

> Under the <u>Burford</u> doctrine, a federal court must decline to interfere with the orders or proceedings of state administrative agencies: (1) if there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) if the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

<u>Dittmer</u>, 146 F.3d at 116 (citations and internal quotations omitted).  The district court in <u>Farkas</u> held that "[d]omestic relations matters . . . are subject to extensive state regulation and state courts are specially competent to adjudicate such matters."  <u>Farkas</u>, 857 F. Supp. at 303.  Here, however, none of the <u>Burford</u> elements are present that were present in <u>Farkas</u>.  Thus, unlike <u>Farkas</u>, the material issue in dispute here – whether defendants fraudulently induced plaintiffs to purchase homes with inadequate water supplies –  is not "an issue which is the subject of extensive state regulation and is particularly within the province of state courts to resolve . . . ." <u>Id.</u> at 304.

Therefore, defendants' motion to stay this action is denied.

### IV. Conclusion[9]

WHEREFORE, for the reasons set forth above, it is hereby

**ORDERED** that defendants' motion to dismiss (Docket No. 31) is:

    1. **GRANTED** as to plaintiffs' RICO claims against Robert Buchalski and Mary Buchalski (Count 3 of the complaint);

    2. **DENIED** as to the state law claims against Robert Buchalski, Mary Buchalski, and Kathie Carswell (the third and fourth causes of action in Count 4 of the complaint); and

    3. **DENIED** as to defendants' request for a stay of this action.

**IT IS SO ORDERED.**

DATED:  September 27, 2007
          Albany, New York

United States Magistrate Judge

---

[9] In their reply memorandum of law, plaintiffs request that "the Court award all costs associated with Plaintiffs' defense of the Defendants' spurious FRCP 10(b) claims." Pls. Reply Mem. of Law at 26.  Although unsuccessful, defendants' motion on this ground was neither spurious nor frivolous.  Plaintiffs' motion for costs is denied.